# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# SOUTH BEND DIVISION

| | |
|---|---|
| CRYSTAL MALDONADO, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) CAUSE NO. 3:18CV68-PPS |
| | ) |
| ANDREW SAUL, | ) |
| **Commissioner of Social Security,** | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

Plaintiff Crystal Maldonado has filed a complaint challenging the Social Security Administration's denial of her application for disability insurance benefits and/or supplemental security income benefits. [DE 1.] After determining that Maldonado had severe impairments including disorders of the thoracic and lumbar spine, disorders of the left knee, degenerative changes in other joints, seizure disorder, obesity, affective disorders, anxiety disorders and personality disorder, the Social Security Administrative Law Judge nonetheless determined that Maldonado has the residual functional capacity to perform light work with certain functional limitations. [AR at 19, 22.][1] The final decision against Maldonado is embodied in a written opinion by the ALJ, issued after a hearing at which Maldonado testified. Maldonado asks me to reverse the ALJ's

---

[1] The administrative record [AR] is found in the court record at docket entries 12, 18 and 19, and consists of a total of 2064 pages. I cite to the pages of this AR according to the Social Security Administration's Bates stamp numbers rather than the court's Electronic Case Filing page number.

decision and remand her case for further proceedings by the Social Security Administration.

My review of the ALJ's decision is deferential. I must affirm it if it is supported by substantial evidence, meaning "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *McKinzey v. Astrue*, 641 F.3d 884, 889 (7th Cir. 2011) (citation omitted). I can't reweigh the evidence or substitute my judgment for that of the ALJ. *Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015). But these standards do not mean that I "will simply rubber-stamp the Commissioner's decision without a critical review of the evidence." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000).

When considering the evidence, "an ALJ is not required to provide a complete and written evaluation of every piece of testimony and evidence, but 'must build a logical bridge from the evidence to his conclusion.'" *Minnick*, 775 F.3d at 935, quoting *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005). This means that an ALJ's decision must offer an explanation of the rationale from the evidence to his or her conclusions "sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford [the claimant] meaningful judicial review." *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014).

## Discussion

Maldonado raises two issues in this appeal. The first is a challenge to the ALJ's conclusion that Maldonado's residual functional capacity includes the ability to

perform light work as defined in 20 C.F.R. §404.1567(b) and 416.967(b). The definition of light work in these provisions includes the ability to do a "good deal of walking or standing." Social Security Ruling 83-10 is more specific: "the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." The functional limitations the ALJ added to Maldonado's RFC addressed climbing, kneeling, crouching and other matters, but not her ability to stand and walk. [AR at 22.] Maldonado's argument is that "[t]he ALJ failed to adequately explain how she concluded the Plaintiff can sustain work requiring her to stand or walk for six hours each day without ever using an assistive device and failed to present any corresponding limitation to the vocational expert." [DE 22 at 18.]

Maldonado was prescribed a cane by her treating nurse practitioner Amanda Aust on December 2, 2014 [AR at 742.] At that visit, Maldonado reported that she had been to the ER the previous Friday after falling down some stairs. [AR at 739.] Maldonado reported to Aust that she could not walk far due to pain in her hips and knees, that she had difficulty sitting and standing for long periods of time, and that she would rate her knee pain as an 8 or 9 out of 10. [AR at 740.] NP Aust found the left knee to exhibit crepitus (a crackling or popping sound), to be tender to palpation, and to have a large bruise. [AR at 742.] Aust noted that she wrote Maldonado a prescription for a cane for "knee joint instability." [*Id.*]

3

Maldonado cites to the portions of the medical record that the ALJ overlooked and which support the conclusion that Maldonado needs the cane for daily ambulation. The office notes of certified Physician Assistant Marcy Showalter on Maldonado's March 26, 2013 office visit reflect some bilateral weakness in her legs, and the observations that Maldonado moved "gingerly around room" as well as "slowly and in obvious pain." [AR at 513.] Weakness in Maldonado's legs is also reflected in the progress notes of her December 1, 2014 visit to Dr. John B. Baccus. [AR at 607.] Maldonado cites medical professionals' "multiple observances of impaired gait with the use of a cane ignored by the ALJ." [DE 22 at 20 citing AR at 1355, 1366, 1465, 1420, 1587.] Maldonado also cites instances she sought medical treatment after falls. [DE 22 at 20 citing AR 582, 842, 893, 1158, 1449, 1522.] Physical therapy notes dated December 4, 2014 reflect Maldonado's therapy goal "to be able to walk with out knees giving away." [AR at 610.]

What was the ALJ's analysis of Maldonado's need for a cane? The ALJ considered whether Maldonado's impairments met disability listing 1.02 for major dysfunction of a joint or listing 1.04 for disorders of the spine. The ALJ concluded that there was "no evidence" in the record that Maldonado had major dysfunction in her legs "that has caused inability to ambulate effectively." [AR at 21.] The ALJ noted that a cane was prescribed for Maldonado, but then expressed the conclusion that "she does

not appear to always use this assistive device when she leaves home." [AR at 21.] No explanation is given at this point in the decision for these conclusions.

Later in the decision the ALJ acknowledges Maldonado's hearing testimony that "she uses a cane on a daily basis." [AR at 23.] Maldonado's testimony actually claimed that she uses her cane "all the time now" and doesn't "go anywhere without it." [AR at 59.] The ALJ observed that Maldonado's friend Heidi Ramirez noted in her Function Report that Maldonado was prescribed a cane and a leg brace [AR at 23, citing AR at 317.] The ALJ's review of Maldonado's orthopedic issues recaps various medical records including those reflecting "degenerative changes in Maldonado's back, shoulders, right knee, and feet," the likelihood of Osgood-Schlatter disease in Maldonado's right knee, degenerative changes in her thoracic and lumbar spine, "abnormalities in Maldonado's left knee, including degenerative changes, joint effusion, chondromalacia patella, patellar subluxation, and likely tendonitis." [AR at 24.]

Despite all this evidence, the ALJ later offers the general claim that "the claimant's examination findings have been largely within normal limits since the alleged onset date." [AR at 25.] Even the paragraph introduced with this conclusion immediately contradicts it with a number of observations relevant to ambulation. These include that at times, Maldonado "was noted to have a limping gait,...tenderness over her back and knees, positive lumbar facet loading,...crepitus in her left knee,

5

decreased range of motion in her back and knees, effusion in her knees, and positive MacMurray's test in her left knee." [AR at 25.] The discussion concludes with the acknowledgment that "the record contains imaging study evidence of abnormalities in her thoracic and lumbar spine," but appears to wave these findings away because Maldonado has not had back surgery.

All this considered, I agree with Maldonado that the ALJ's decision does not reasonably or adequately explain her potentially critical conclusion that Maldonado does not require the assistance of a cane for daily ambulation, and that she is capable of walking and standing 6 hours out of an 8-hour workday. "An ALJ must articulate, at a minimum his (in this case, her) analysis of the evidence in order to allow the reviewing court to trace the path of his reasoning and to be assured that the ALJ considered the important evidence." *Cruz v. Astrue*, 746 F.Supp.2d 978, 985 (N.D.Ind. 2010) (Cherry, M.J.). In *Cruz* as here, the ALJ's decision lacks sufficient explanation of the "reasons for excluding cane use from the RFC." *Id*. at 989. This violates the Social Security Administration's requirement that "[t]he RFC assessment must include a discussion of why reported symptom-related functional imitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." *Id.*, citing SSR 96-8p.

In Maldonado's medical record there is plenty of objective and subjective support for difficulty ambulating effectively. And the ALJ fails to explain her

6

conclusion that, despite her testimony to the contrary, Maldonado does not use her cane on a regular basis. "An ALJ must grapple with lines of evidence that are contrary to her conclusion, and here the ALJ did not do so." *Hardy v. Berryhill*, 908 F.3d 309, 312 (7th Cir. 2018) [concluding that the ALJ "did not engage Dr. Bauer's observations that Hardy showed up at his appointment dependent on a cane"]. The decision lacks the required "accurate and logical bridge" between the record and the ALJ's conclusion that Maldonado was capable of the exertional requirements of light work without reliance on a cane. *Rainey v. Berryhill*, 731 Fed.Appx. 519, 523 (7th Cir. 2018) [faulting the ALJ's conclusion that claimant Rainey was not actually reliant on his cane]. On this basis, the decision must be reversed and the case remanded for further consideration.

Maldonado's second argument for reversal is that the ALJ erred "when she failed to adequately account for her own findings of Plaintiff's moderate limitations of concentration, persistence, and pace in her assigned residual functional capacity and Step Five hypothetical questions to the vocational expert." [DE 22 at 21.] The decision contains the ALJ's finding "consistent with the opinions of the State agency psychologists in late 2014 and early 2015…, that the claimant's mental impairments cause moderate limitations in her ability to…sustain concentration, persistence or pace." [AR at 21.] This finding was made during the ALJ's consideration whether Maldonado meets the prescribed criteria of disability listings for Mental Disorders, 12.04 (Depressive, bipolar and related disorders), 12.06 (Anxiety and obsessive-

7

compulsive disorders) and 12.08 (Personality and impulse-control disorders). Concentration, persistence and pace are factors addressed in paragraph B of each of these listings.

The ALJ explains that her findings about these mental impairments are for purposes of the listing analysis at step three of the customary disability analysis, and that the determination of residual functional capacity later at step 4 utilizes "a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B of the adult mental disorders listings[.]" [AR at 22.] Immediately thereafter, the ALJ sets out the RFC determination, addressing mental capacities this way:

> [Maldonado] can understand, remember, and carry out simple instructions and tasks, make judgments on simple work-related decisions, respond appropriately to usual work situations, deal with routine work changes in a routine work setting, and respond appropriately to occasional interactions with co-workers, supervisors, and the general public.

[*Id.*] Relying on several Seventh Circuit Court of Appeals decisions, Maldonado argues that this RFC, and the corresponding hypothetical posed to the vocational expert, did not capture the extent of her limitations with respect to concentration, persistence, and pace. "As a result of the ALJ's failure to account for any true limitation in sustained concentration in his [sic] hypothetical questions, the ALJ relied on the vocational expert's resultantly uninformed testimony in determining whether Plaintiff could

8

perform 'other work' in the national economy at Step Five," and "[s]uch reliance renders her Step Five conclusion unsupported by substantial evidence." [DE 22 at 23.]

*Varga v. Colvin*, 794 F.3d 809, 810 (7th Cir. 2015) involved similar circumstances, in which the Court of Appeals concluded that the ALJ's failure to include the claimant's limitations in concentration, persistence, and pace in the hypothetical question was a "fatal flaw" that required reversal of the conclusion that the claimant was not disabled. The Seventh Circuit has clearly indicated that "both the hypothetical posed to the VE and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record." *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014), quoted in *Varga*, 794 F.3d at 813. Although *Varga* teaches that the exact terms "concentration, persistence and pace" are not required, the court said: "we have repeatedly rejected the notion that a hypothetical like the one here 'confining the claimant to simple, routine tasks and limited interactions with others adequately captures....limitations in concentration, persistence, and pace." *Id*. at 814.

The psychologists' assessments that the ALJ relied upon in concluding that Maldonado had moderate limitations in these areas noted more specifically that Maldonado was moderately limited in her ability to:

- understand and remember detailed instructions;
- carry out detailed instructions;
- maintain attention and concentration for extended periods;

9

- complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; and

- accept instructions and respond appropriately to criticism from supervisors.

[AR at 101-102.] These sound like the "more detailed assessment by itemizing various functions" the ALJ said her RFC determination required, but Maldonado's moderate limitations in each of these functions were not captured in the RFC nor were they posed to the vocational expert for consideration in Maldonado's ability to perform jobs available in the national economy. *Varga*, 794 F.3d at 815; *Yurt v. Colvin*, 758 F.3d 850, 855 (7th Cir. 2014). And as in these other cases, the record does not reflect that the VE had herself reviewed Maldonado's medical record so as to have any independent awareness of these findings and conclusions of the State agency psychologists. *See Varga*, 794 F.3d at 814; *Yurt*, 758 F.3d at 857-58. Because the RFC assessment and the hypothetical posed to the VE did not fully and fairly incorporate all of the mental limitations supported by the medical record, and even all of those found by the ALJ, the decision that Maldonado was not disabled was not supported by substantial evidence.

ACCORDINGLY:

The final decision of the Commissioner of Social Security denying plaintiff Crystal Maldonado's application for Social Security Disability benefits is REVERSED, and the matter is remanded to the Commissioner for further proceedings consistent with this opinion.

The Clerk shall enter judgment in favor of plaintiff and against the defendant.

**SO ORDERED**.

ENTERED: August 29, 2019.

                                             /s/ Philip P. Simon
                                          **PHILIP P. SIMON, JUDGE**
                                          **UNITED STATES DISTRICT COURT**